Richard B. Fox(SBN 283447)
800 Pollard Rd.
Ste. B205
Los Gatos, CA 95032
Telephone: (408) 370-0110
Facsimile: (408) 871-1210

Attorney for Plaintiff
RICHARD B. FOX, M.D.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD B. FOX,<br><br>Plaintiff,<br><br>vs.<br><br>HCA HOLDINGS INC.,<br><br>Defendant. | **No. 5:15-cv-02073-HRL**<br><br>**FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Racketeer-Influenced Criminal Organization (RICO), 18 U.S.C. § 1961 et seq.<br>Fed.R.Civ.P. Rule 60(d)<br>Fed.R.Civ.P. Rule 15(a) |

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . 1

I. NATURE OF THIS ACTION . . . . . . . . . . 3

II. JURISDICTION, VENUE, AND INTERSTATE COMMERCE . . . . . . . . . . 4
- A. Subject Matter Jurisdiction . . . . . . . . . . 4
- B. Venue . . . . . . . . . . 4
- C. Interstate Commerce . . . . . . . . . . 4

III. THE PARTIES AND OTHER RELEVANT PERSONS . . . . . . . . . . 4
- A. Plaintiff Richard B. Fox, M.D. . . . . . . . . . . 5
- B. Defendant HCA . . . . . . . . . . 5
- C. HCA Legal Counsel . . . . . . . . . . 5

IV. OPERATIVE FACTS AND EVENTS . . . . . . . . . . 6
- A. Proceedings In The Northern District of California . . . . . . . . . . 6
- B. Proceedings In The Ninth Circuit Court of Appeals . . . . . . . . . . 6
- C. Implausibility of a Random Panel Assignment . . . . . . . . . . 8

V. FIRST CLAIM FOR RELIEF . . . . . . . . . . 10

VI. SECOND CLAIM FOR RELIEF . . . . . . . . . . 11

VII. PRAYER FOR RELIEF . . . . . . . . . . 11

VIII. DEMAND FOR JURY TRIAL . . . . . . . . . . 13

Case5:15-cv-02073-HRL Document6 Filed05/15/15 Page3 of 16

IX. LIST OF EXHIBITS . . . . . . . . . . 14

*Fox v. HCA* - Complaint
2

This FIRST AMENDED COMPLAINT is filed pursuant to Fed.R.Civ.P. Rule 15(a) on the basis that no responsive pleading has been filed in this case to this time.

## I. NATURE OF THIS ACTION

1. It was recently reported in the New York Times that some panel assignments in the Ninth Circuit Court of Appeals have been non-random. Exhibit 1. This long-standing practice was confirmed by Judge Alex Kozinski, who recently stepped down as Chief Judge for the Ninth Circuit. Exhibit 2. Some observers have pointed out the potential for abuse under this system. Exhibit 3.

2. The gravamen of this Complaint is that defendant HCA exerted improper influence, by as yet undetermined means, to cause a non-random panel assignment of Dr. Fox's antitrust/RICO appeal to a panel presided over by a judge who had received over three million dollars of *pro bono* legal services from HCA's lead counsel in the Medicare fraud case that served as the RICO predicate acts at issue in the appeal. The presiding judge had also set up a fundraising trust of which the lead trustee was the head of the antitrust group of HCA's lead trial counsel in the antitrust/RICO case on appeal.

3. Dr. Fox moved to recuse the judge as soon as he became generally aware of these conflicts and before being able to obtain the details from the judge's relevant financial disclosures, an often time-consuming process that involves notifying the judge in question before the disclosures can be released. The judge denied that motion.

4. When Dr. Fox eventually obtained the judge's financial disclosures and he became aware of the multi-million dollar size of the judge's benefits from these two sources, he renewed his recusal motion based on those disclosures. This time the motion was granted, even though the second motion contained no information that was not known to the judge when he denied the first motion.

5. Although the presiding judge recused himself and was replaced, there was no re-hearing before a new panel. The subsequent un-published decision was adverse to Dr. Fox. It closely reflected the comments made by the presiding judge at oral argument, suggesting that either: (1) the post-recusal panel was heavily influenced by the recused judge, or (2) the presiding judge

circulated an opinion prior to his recusal that was then substantially adopted by the post-recusal panel. In either case, the resulting decision was tainted by the improper assignment of the subsequently recused judge to the pre-recusal panel.

6. But for HCA's improper influence on that assignment, the outcome of the appeal would have been favorable to Dr. Fox and unfavorable to HCA because a different, unbiased panel reached the opposite result in a closely related and contemporaneous case which raised the same issue. Thus, by HCA's obstruction of justice, Dr. Fox was injured in his business and property, giving rise to this RICO cause of action. HCA also perpetrated a fraud upon the court, entitling Dr. Fox to relief from the judgement in the earlier case under Fed.R.Civ.P. Rule 60(d).

## II.     JURISDICTION, VENUE, AND INTERSTATE COMMERCE

### A.    Subject Matter Jurisdiction

7. The court has jurisdiction over this action because it arises under the laws of the United States. 28 U.S.C. § 1331. Specifically, the court has jurisdiction of the subject matter of this complaint under *18 U.S.C. § 1961 et seq*, federal question jurisdiction. The court also jurisdiction under Fed.R.Civ.P. Rule 60(d).

### B.    Venue

8. Venue is appropriate in this court because a substantial part of the acts giving rise to this lawsuit occurred in this district. 28 U.S.C. § 1391.

### C.    Interstate Commerce

9. Dr. Fox is a physician who, at all relevant times: (1) has had offices in San Jose, California and Los Gatos, California, (2) provided medical services to patients in California, and (3) has been involved in interstate commerce in that: (a) his patients have come both from California and from other states; and (b) he has purchased medical supplies from and received significant amounts in payment for his services from sources outside of the state of California.

10. Defendant HCA Holdings Inc. is a holding company engaged in interstate commerce through affiliates that own and operate hospitals and related health care entities throughout the United States and in several other countries.

## III. THE PARTIES AND OTHER RELEVANT PERSONS

**A. Plaintiff Richard B. Fox, M.D.**

11. Plaintiff Richard B. Fox, M.D. ("Dr. Fox" or "plaintiff") is, and was at all times mentioned, a board-certified or board eligible specialist in Pediatric Critical Care Medicine and in Pediatric Pulmonology Medicine engaged in private practice. In 1999 the HCA-owned Good Samaritan Hospital of San Jose revoked Dr. Fox's privileges to practice at that hospital for "administrative" reasons having nothing to do with the quality of Dr. Fox's patient care or his professional conduct. It was admitted by the hospital's current CEO that Dr. Fox was an "outstanding" physician. Dr. Fox maintained that his removal was to eliminate him from competing with the hospital's own employed specialists in pediatric critical care.

**B. Defendant HCA**

12. Defendant HCA, a/k/a "Columbia/HCA" and "HCA-Hospital Corporation of America" is a holding company with numerous affilliates providing hospital and health-related services in the numerous states within the United States and in other countries. During the period from the mid-1990's until 2003, HCA and its predecessors were investigated by several branches of the federal government, including the Departments of Justice and Health & Human Services for an extensive pattern of Medicare fraud. HCA pled guilty to several criminal counts of Medicare fraud and ultimately paid nearly two billion dollars in criminal and civil fines.

**C. HCA Legal Counsel**

13. Latham & Watkins is a large legal services firm with offices in many major U.S. cities. Latham & Watkins served as HCA's lead counsel in HCA's defense against the Medicare fraud charges.

14. Ropes & Gray is also a large legal services firm with offices in many major U.S. cities. Ropes & Gray served as HCA's lead trial counsel in the district court case that led to Dr. Fox's Ninth Circuit appeal commenced in 2010. Ropes & Gray also served as associate counsel in the appeal itself.

## IV. OPERATIVE FACTS AND EVENTS

### A. Proceedings In The Northern District of California

15. On March 4, 2004 Dr. Fox commenced an antitrust action against the Good Samaritan Hospital of San Jose and its corporate owner, HCA, *Fox v. Good Samaritan Hospital et al.,* 5:04-cv-00874 (CAND).

16. On February 2, 2009 Dr. Fox moved the district court for leave to amend his complaint to add additional RICO causes of action based on HCA's use of Medicare fraud proceeds to subsidize Dr. Fox's competitors in violation of 18 U.S.C. § 1962(a).

17. While Dr. Fox's RICO motion was pending, HCA decided to replace its lead trial counsel in the district court case with Ropes & Gray.

18. On July 15, 2009 James M. Spears, then head of Ropes & Gray's antitrust group in Washington, D.C., set up a legal defense fund, the Bybee Legal Expense Fund.

19. On January 29, 2010 HCA moved for summary judgment based on immunity under the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. 11101 et seq.

20. On February 24, 2010 Dr. Fox rebutted the HCQIA argument on the basis that he got no hearing or other fair procedure, as required for HCQIA immunity, before defendants revoked his hospital privileges.

21. On March 29, 2010 the district court granted HCA's Motion for Summary Judgment based on immunity under the Health Care Quality Improvement Act, 42 U.S.C. 11101 et seq., although the court was unable to support its decision with any applicable Ninth Circuit authority holding that HCQIA immunity is available where no actual hearing or other fair procedure has been afforded. This remains an open question in the Ninth Circuit (*vide infra*).

### B. Proceedings In The Ninth Circuit Court of Appeals

22. On April 28, 2010 Dr. Fox filed his appeal in the Ninth Circuit, case number 10-15989. On August 6, 2010 HCA filed its cross-appeal, case number 10-16701.

23. Dr. Fox filed his Opening Brief on November 15, 2010.

24. On December 6, 2010 Dr. Fox filed a Notice of Related Case, *Chudacoff v. University*

*Medical Center*, # 09-17558, which also raised the issue of the adequacy of hearing procedures under HCQIA.

25. On January 14, 2011 HCA filed its Respondent's Brief and Opening Brief in its cross-appeal.

26. On February 25, 2011 Dr. Fox filed his Reply Brief and his Respondent's Brief to HCA's cross-appeal.

27. On March 28, 2011 HCA filed its Reply Brief in its cross-appeal.

28. On April 29, 2011 the Court issued notice that the appeal was calendared for oral argument on June 17, 2011.

29. The case was argued and submitted on June 17, 2011.

30. On July 13, 2011 Dr. Fox moved to recuse the presiding judge, Jay S. Bybee, for conflicts relating to his ties with HCA counsel Latham & Watkins and Ropes & Gray.

31. On August 4, 2011 Judge Bybee denied the recusal motion.

32. On August 8, 2011 Dr. Fox moved for reconsideration of Judge Bybee's denial of Dr. Fox's recusal motion based on discovering that: (1) Judge Bybee had received upwards of 2.5 million dollars of *pro bono* legal services from HCA counsel Latham & Watkins, and (2) Judge Bybee had received more than $25,000 from the Bybee Legal Expense Fund organized by Ropes & Gray's senior antitrust partner, Mit Spears. Exhibits 4-6.

33. A few weeks later Dr. Fox obtained Judge Bybee's Financial Disclosure Report for 2010 showing that he received another $678,310 of *pro bono* legal services from Latham and Watkins in that year, bringing his total benefits from Latham & Watkins at that time to $3,251,893. That 2010 disclosure also contained another $20,012 received from the Bybee Legal Expense Fund, bringing that total to $45,106. Exhibit 7.

34. On August 16, 2011 Judge Bybee granted the motion for reconsideration and recused himself.

35. On August 23, 2011 the Clerk replaced Judge Bybee with another judge.

36. On February 3, 2012 the panel affirmed the lower court ruling for defendant HCA based on HCQIA immunity in an unpublished decision.

**C.     Implausibility of a Random Panel Assignment**

37.     As noted above, non-random panel assignments occur in the Ninth Circuit for reasons that do not appear on the record. Exhibits 1-3.

38.     The panel assignment in Dr. Fox's appeal occurred 32 days after briefing was complete.[1]

39.     The next shortest interval between briefing and notice of oral argument was 66 days in two criminal cases. The next shortest interval between briefing and notice of oral argument in a civil case was 86 days.

40.     The average interval between completion of briefing and notice of oral argument for all cases heard in San Francisco by the Ninth Circuit, in June 2011, 58 cases in all, was 283 days. Excluding immigration appeals, which wait much longer to be heard than other appeals, the average interval between completion of briefing and notice of oral argument for appeals heard in San Francisco in June 2011, 52 in all, was still 240 days for all non-immigration cases.

41.     During May, June, and July of 2011 a total of 182 cases were heard by the Ninth Circuit in San Francisco. Unless there was a calendaring order from the Court, no case had a shorter interval between completion of briefing and notice of oral argument than did the Fox case and one equaled it, a criminal case. Thus, the odds of a non-criminal case randomly getting such an early panel assignment as did the Fox case are on the order of one percent or less.

42.     The conclusion is inescapable that the *Fox* appeal was expedited, although nothing in the record reflects or explains that. Neither was expedited hearing requested. Furthermore, the closely related *Chudacoff* case had been submitted but not decided at the time that oral argument was set in *Fox*. Thus, there was a real danger that conflicting opinions could have resulted with two separate panels both considering the HCQIA issue at the same time. Reasonably, the *Fox* appeal should have been held back until *Chudacoff* was decided, not expedited.

43.     On March 29, 2011 a motion to expedite was filed in *Kevin Buckwalter v. State of Nevada Board of Medical Examiners*, Ninth Circuit Ct. of Appeals case number 11-15742, docket entry # 3. It presented a similar issue as did *Fox*, immunity for medical disciplinary actions.

---

[1] The Ninth Circuit records are in conflict on this point, with some records showing notice of oral argument as early as 30 days after briefing was complete.

44. On April 13 the motion to expedite the *Buckwalter* case was granted:

> Filed clerk order (Deputy Clerk: TAH): The appellant's opposed motion to expedite the case is granted in part. The briefing schedule is expedited. The opening brief is due April 22, 2011. The answering brief is due May 23, 2011. The optional reply brief is due within 14 days after service of the answering brief. No telephonic extensions of time to file briefs will be granted. Written requests for extensions of time to file briefs are disfavored. This case will be calendared pursuant to the priority accorded by Ninth Circuit Rule 34-3(3). [7715224] (WL) [Entered: 04/13/2011 10:58 AM]
> Docket entry # 7.

45. The briefing in *Buckwalter* was expedited and was completed on May 31, 2011.

46. Oral argument for the *Buckwalter* case was noticed on December 7, 2011 and set for February 16, 2012. The interval between completion of briefing and notice of oral argument in this expedited case was 190 days. The case priority was determined under Fed.R.App.P. Rule 34-3(3). Given that *Buckwalter* raised a very similar issue as did *Fox*, immunity for medical disciplinary proceedings required by law, the two cases should have been given similar priority under Rule 34-3(3). However, they were not, not even remotely close, 32 days for *Fox* versus 190 days for *Buckwalter*. If *Fox* had been accorded a similar priority to that of *Buckwalter*, it would never plausibly have been assigned to Judge Bybee's panel in June 2011.

47. Since, in June 2011, Judge Bybee was still relatively junior among all active status judges in the Ninth Circuit, of which there were about 28, the odds of being assigned to a panel over which he would preside could be estimated at around two percent or less.

48. Thus, the odds of the Fox appeal being randomly assigned 32 days after completion of briefing to a panel presided over by Judge Bybee would be approximately one percent times two percent, or about 0.02%, about two chances in ten thousand.

49. Given that recusals are even more rare, the odds of the Fox case being randomly assigned within 32 days of completion of briefing to a judge who later had to recuse himself must be on the order of winning the lottery, which is what seems to have happened to HCA in this case.

50. Given the fact that it has been admitted that non-random assignments occurred in the Ninth Circuit in 2011 without explanation on the record, and the implausibility of simple good fortune as the sole explanation for the panel assignment in this case, it is plausible that someone intervened in the assignment of the Fox appeal to steer it to Judge Bybee's panel. The most plausible person or entity to have undertaken such an intervention is defendant HCA, with the possible involvement of

others by a process as yet undetermined.

51. Had the appeal been assigned to an impartial panel untainted by Judge Bybee's views, such a panel would likely have found that HCQIA immunity is not available where the doctor does not get a formal hearing. This was the issue presented in the related case noted above, *Chudacoff v. University Medical Center*, 437 Fed.Appx 609. Although the court in *Chudacoff* ultimately found it unnecessary to decide the HCQIA issue in that case, it made the following comment in dicta, at FN 2, in its memorandum decision filed June 9, 2011, just eight days before Dr. Fox's case was argued on June 17, 2011:

> Were we to reach the issue, we would be inclined to affirm the denial of HCQIA immunity. Although the district court erred in treating noncompliance with 42 U.S.C. § 11112(b)'s "safe harbor" provision as automatically preclusive of HCQIA immunity, Defendants not only failed to provide Chudacoff with notice and hearing as prescribed by the "safe harbor" provision prior to suspension of his privileges, but also failed to provide him with any reasonable alternative procedures. Defendants' actions do not satisfy the fairness requirements under 42 U.S.C. § 11112(a), nor can Chudacoff's more than-fourteen-day suspension be justified as a summary or health-emergency suspension under 42 U.S.C. § 11112(c), particularly when Defendants have already conceded that it was *not* a summary suspension but rather a "routine administrative action." See *Chudacoff v. Univ. Med. Ctr. of S. Nev. (Chudacoff I")*, 609 F.Supp.2d 1163, 1171 (D.Nev.2009).

52. If the post-recusal panel had known of HCA's impropriety by which Judge Bybee was assigned to preside over the Fox appeal, the case would have been decided differently, consistent with the memorandum opinion in *Chudacoff*.

## V. FIRST CLAIM FOR RELIEF

**(Civil RICO, 18 U.S.C. §§ 1962[c], 1964[c])**

53. Dr. Fox incorporates by reference Paragraphs 1-52.

54. Defendant HCA obstructed justice under 18 U.S.C. § 1503 by intervening through means as yet unknown to improperly steer the assignment of Dr. Fox's 2010 antitrust/RICO appeal in the Ninth Circuit to a panel presided over by a judge who: (1) had accepted upwards of three million dollars of *pro bono* legal services from HCA's lead defense counsel in the Medicare fraud case that provided the predicate acts underlying the RICO claims at issue in that appeal, and (2) had accepted $45,106 in cash from a legal defense fund organized by the head of the antitrust section of HCA's lead trial counsel.

55. The judge recused himself after these conflicts were pointed out to him and was replaced. The decision of the post-recusal panel was adverse to Dr. Fox.

56. Had the post-recusal panel know of HCA's misconduct in the appeal, the decision would have been favorable to Dr. Fox. Had the case been assigned to an impartial panel in the first place, the decision in the appeal would have been favorable to Dr. Fox.

57. HCA's obstruction of justice under 18 U.S.C. § 1503 constitutes a RICO predicate act under 18 U.S.C. § 1961(B). Furthermore, HCA's predecessor, Columbia/HCA pled guilty to Medicare fraud in the past where wire and mail fraud are also RICO predicate acts under § 1961(B). Here the obstruction of justice in Dr. Fox's 2010 appeal was related to the earlier Medicare fraud since the former was necessary to protect HCA from the legal consequences of the latter in that appeal. For the purpose of applying the RICO statute, this constitutes a "pattern of racketeering activity" by HCA.

58. Since Dr. Fox's earlier antitrust and RICO claims constituted personal property under California law, HCA's improper interference in Dr. Fox's pursuit of those claims injured in Dr. Fox in his business and property.

59. As a direct and proximate result of defendant HCA's activities in violation of the Racketeer Influenced and Corrupt Organizations Act, Dr. Fox suffered substantial losses and damages to his property. These losses entitle Dr. Fox to recover treble damages against defendant HCA and costs of suit, including reasonable attorney's fees, pursuant to 18 U.S.C. Section 1964(c).

## VI. SECOND CLAIM FOR RELIEF

### Fed.R.Civ.Proc. Rule 60(d)

60. Because HCA perpetrated a fraud upon the court in the underlying action, *Fox v. Good Samaritan Hospital, et al.* 5:04-cv-00874 (CAND), Dr. Fox is entitled to relief from the judgement in that case under Fed.R.Civ.P. 60(d).

## VII. PRAYER FOR RELIEF

WHEREFORE, Dr. Fox prays that the Court order, adjudge and decree:

A. Defendant HCA's conduct, as alleged in the First Claim for Relief, unlawful under the

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.;*

B. The judgement entered in *Fox v. Good Samaritan Hospital et al*, 5:04-cv-00874 (CAND) is vacated under Fed.R.Civ.P. 60(d) for fraud upon the court:

C. Plaintiff recover from Defendant his general and special damages according to proof;

D. Plaintiff recover from Defendant threefold his actual damages sustained as a result of said defendant's RlCO violation;

E. Plaintiff recover from Defendant his costs and reasonable attorney fees as provided by the RlCO Act;

F. Plaintiff recover from Defendant prejudgment and post-judgment interest on any award; and

G. Plaintiff be awarded such other and further relief in law or in equity as the Court may deem just and proper in the premises.

Dated: May 15, 2015

/s/ Richard B. Fox
Richard B. Fox,
Plaintiff *Pro se*

## VIII. DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States, Rule 38(a) and (b) of the Federal Rules of Civil Procedure, and similar provisions of any state of the United States that apply, Plaintiff demands a trial by jury of all issues triable of right by jury.

Dated: May 15, 2015         /s/ Richard B. Fox
                            Richard B. Fox,
                            Plaintiff *Pro se*

## IX. LIST OF EXHIBITS

1. Coalition Challenges Selection of Judges in Same-Sex Marriage Case. Adam Liptak, New York Times, Nov. 10, 2014. Available at: http://nyti.ms/1ss3aHu.

2. Chief Judge Kozinski Responds. Ed Whelan, National Review, November 20, 2014. Available at: http://www.nationalreview.com/bench-memos/393074/chief-judge-kozinski-responds-ed-whelan.

3. A Curious Panel Selection Procedure. Edward Whelan. San Francisco Daily Jounral, December 15, 2014. Available at: http://eppc.org/publications/a-curious-panel-selection-procedure/.

4. Financial Disclosure Report For Calendar Year 2007. Judge Jay S. Bybee, U. S. Court of Appeals, Ninth Circuit.

5. Financial Disclosure Report For Calendar Year 2008. Judge Jay S. Bybee, U. S. Court of Appeals, Ninth Circuit.

6. Financial Disclosure Report For Calendar Year 2009. Judge Jay S. Bybee, U. S. Court of Appeals, Ninth Circuit.

7. Financial Disclosure Report For Calendar Year 2010. Judge Jay S. Bybee, U. S. Court of Appeals, Ninth Circuit.

8. Financial Disclosure Report For Calendar Year 2011. Judge Jay S. Bybee, U. S. Court of Appeals, Ninth Circuit.

9. Financial Disclosure Report For Calendar Year 2012. Judge Jay S. Bybee, U. S. Court of Appeals, Ninth Circuit.

Case5:15-cv-02073-HRL Document6 Filed05/15/15 Page16 of 16